# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. |
| | ) | 14-00213-CB |
| PHOUVA PHOTHISAT, | ) | |
| | ) | |
| **Defendant** | ) | |

## ORDER

This matter is before the Court on the Defendant's motion to suppress (Doc. 28) and the government's response thereto (Doc. 31). Defendant seeks to suppress evidence seized from his home pursuant to a search warrant. For the reasons set forth below, the Court finds that the motion is due to be denied without an evidentiary hearing.

**Facts**

On May 30, 2014, Mobile County District Judge Joe Basenberg issued a search warrant for 7951 Magnolia Crest Drive in Irvington, Alabama ("the Irvington address"). Sergeant Larry Toland signed the search warrant affidavit, which cited following facts as the basis for probable cause:

- Sgt. Tolands's knowledge, "[t]hrough training and experience," that drug dealers frequently have large sums of cash on hand, frequently keep safes/lock boxes and other secure compartments to protect their cash, frequently maintain records of their drug transactions, including telephone lists, money ledgers and customer lists, frequently use cell phones to avoid detection, and often keep on hand bags scales and other packaging.

- Sgt. Toland's training and experience. He had been employed by Mobile Police Department since 2001, was currently "assigned to Mobile County Street Enforcement Narcotics Team since October 2013," and had "[a] prior two-year assignment to the Street Level Interdiction Drug Enforcement detail," in addition to "training in the conduct of drug dealers and drug investigations, experience debriefing defendants, confidential informants, witnesses and others with personal experience in the drug trade.

- Sgt. Toland's meeting "within the past 72 hours" with a reliable confidential informant (RCI) who advised that he could purchase methamphetamine from Phouva Phothisat at the Irvington address and that "Phouva sells methamphetamine to customers and also supplies several other dealers in the Asian community with high quality methamphetamine commonly referred to as 'ice' or 'clean'." Within the past six months, this RCI had provided information, previously unknown to law enforcement, about "importation, manufacturing and distribution of methamphetamine in the Mobile and costal Mississippi areas." This information was verified by Sgt. Toland's direct observations and corroborated by other law enforcement agencies. In addition, the RCI had provided information to law enforcement on other prior occasions "that proved to be true and correct after the execution of warrants based on information he provided."

- A controlled buy made by the RCI at the Irvington address under the supervision and surveillance of Sgt. Toland and other officers. Prior to the transaction, the officers searched the RCI and his vehicle for contraband and

money and found none, and gave the RCI prerecorded money for the controlled buy. Next, they watched him drive to the Irvington address and, a short time later, exit the area of the house. The RCI then met the officers at a predetermined location and handed Toland "a quantity of methamphetamine." The RCI explained that he had "knocked on [Phouva's] window," Phouva met him in the back yard and asked how much he needed, took the RCI's money, went back in the house and came out and "handed the RCI a clear plastic baggie containing [methamphetamine]."

(Search Aff., Doc. 31-2.)

Based on the foregoing facts, Sgt. Toland requested, and was granted, permission to search the Irvington address for the following property:

> Illegal drugs, to wit: Methamphetamine, cell phones, phone bills, documents, ledgers, currency, prerecorded currency . . . , photographs, paraphernalia, lock boxes and safes, video survielance [sic] and recording devices, and weapons that may be used to facilitate illegal drug transactions.

(*Id.*)

The search warrant was executed on June 2, 2014. According to the government, law enforcement seized over 100 grams of methamphetamine, plastic baggies, scales, identification papers, and 15 firearms.

**Issues Raised**

Defendant argues that evidence from the search should be suppressed because: (1) the search warrant, in general, was not supported by probable cause; (2) the search warrant affidavit did not provide probable cause to seize the firearms; and (3) either (a) the search warrant affidavit failed to establish a nexus

between certain items to be seized and the criminal activity described *or* (b) the execution of the search warrant was unlawful because some items seized were outside the scope of the search warrant.

**Legal Analysis**[1]

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Am. IV, U.S. Const. Thus, a search warrant must: (1) be based on probable cause; (2) be supported by a sworn affidavit; (3) particularly describe the place to be searched; and (4) particularly describe the items to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). The Fourth Amendment itself does not preclude the use of illegally seized evidence. Nevertheless, evidence seized in violation of the Fourth Amendment is generally excluded from trial. *United States v. Leon*, 468 U.S. 897, 905 (1984).

**The Search Warrant & Probable Cause**

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170

---

[1] Defendant's motion to suppress rests almost exclusively on the sufficiency of the search warrant affidavit, an issue that requires no evidentiary hearing. To the extent that the motion challenges the execution of the search warrant, no hearing is warranted because the Defendant has failed to allege "definite, specific, detailed, and nonconjectural" facts "which, if proven, would provide a basis for relief. *United States v. Richardson*, 764 F.2d 1514, 152 (11th Cir. 1985).

4

F.3d 1350, 1352 (11th Cir. 1999). In *Brundidge* the Eleventh Circuit provided a review of "some well-established law on probable cause."

> "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts[.]" To avoid "rigid" legal rules, [the Supreme Court in *Illinois v. Gates*] changed the "two-pronged test" of *Aguilar v. Texas*, 378 U.S. 108, 114, 4 S.Ct. 1509, 12 L.Ed.2d 723 (1964), into a totality of the circumstances test. Under the *Gates* totality of the circumstances test, the "veracity" and "basis of knowledge" prongs of Aguilar, for assessing the usefulness of an informant's tips, are not independent. "[T]hey are better understood as relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for ... by a strong showing as to the other[.]"

*Id.* at 1352-53 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 & 233 (1983) (some internal citations omitted). "The focus in a warrant application is usually on whether the suspect committed a crime and whether evidence of the crime is to be found at [the place to be searched]. . . . Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *United States v. Martin*, 297 F.3d 1308, 1315 (11th Cir. 2002).

The record contradicts Defendant's arguments that the search warrant overall lacked probable cause. First, Defendant asserts that probable cause is lacking because "[t]he judicial officer had no reliable way of determining whether the statements and allegations by the affiant were based on his personal knowledge or hearsay sources." (Def.'s Br. ¶ 11(a).) That is simply incorrect. Sgt. Toland describes throughout the affidavit events that were within his personal knowledge or observations, such as: Toland's knowledge and training regarding the practices

5

of drug dealers; Toland's personal verification (by his own observations and through other law enforcement agencies) that information provided by the RCI on prior occasions that proved to be true; Toland's interactions with the RCI before and after the controlled buy and his observation of events during the buy itself. Defendant also claims that Sgt. Toland exaggerated his expertise by claiming to have two years experience in narcotics enforcement when, in fact, he had less than 8 months. Defendant has misread the affidavit. Sgt. Toland stated that he had been in his current position since October 2013 and that he had a "prior two-year assignment to the Street Level Interdiction Drug Enforcement detail." (Search Aff. ¶ 3, Doc. 31-2.)

Particularly puzzling is Defendant's claim that "the affidavit lacks the showing prescribed by *Gates*, a demonstration of the confidential informant's veracity and/or independent corroboration of the information to obviate the need to demonstrate his veracity." This affidavit has both. First, Sgt. Toland sets out information attesting to the RCI's veracity: (1) within the past six months he provided information to Toland regarding methamphetamine manufacture and distribution in Mobile and coastal Mississippi which "at the time was unknown but later proven to be accurate and correct;" and (2) on "several previous occasions" he had provided information used as the basis of search warrants and that information also "proved to be true and correct." (*Id.*) But Sgt. Toland did not rely solely on the RCI's veracity. He set up a controlled buy, which independently corroborated the

RCI's information that methamphetamine could be purchased from the Defendant's house.[2]

**The Firearms**

Defendant asserts that the search warrant affidavit does not provide probable cause for the seizure of firearms. He correctly points out that the affidavit does not connect the dots between the illegal activity and the seizure of firearms. Specifically, the search warrant permits the seizure of firearms even though nothing in the affidavit connects firearms with the residence to be searched. Nevertheless, the seizure of the firearms was not unlawful. *United States v. Prather*, 279 Fed. Appx. (11th Cir. 2008), involved a similar situation. In that case, police executed search warrants on two separate occasions permitting searches for drugs and items related to the sale, manufacture or distribution of drugs. Firearms were not mentioned in either search warrant but were seized during each search. The defendant argued that the firearms should have been excluded from evidence because police exceeded the scope of the search warrant. The Eleventh Circuit disagreed, stating: "[T]he police did not err in confiscating weapons when they found them. When law enforcement officers stumble across hidden guns during a lawful search for drugs, they are allowed to draw the reasonable inference that the guns may be related to drug trafficking occurring at the location. That is precisely what the police did in

---

[2]Defendant makes an additional argument that "[t]he language of the supporting affidavit and resulting search warrant appear to be boiler plate without any limitation premised upon a connection to the alleged offenses being investigated." (Def.'s Br. ¶ 11(d).) Defendant does not identify the language to which he objects, or why it might undermine a probable cause determination.

7

this case." *Id.* at 766. (citing *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir.1990)). The same is true here.

**Nexus/Scope**

Defendant's final argument is that "[t]he wholesale and indiscriminate seizure of identifications, papers and the firearms without a separate determination of the nexus between the items seized and the alleged offense demonstrates that neither the warrant nor the execution of the warrant complied with the limitations imposed by the Fourth Amendment of the Constitution of the United States." (Def.'s Br. ¶11(f).) This argument is confusing and is susceptible to two interpretations: (1) there was no probable cause to permit the inclusion of "identification, papers and [ ] firearms" in the search warrant *or* (2) law enforcement seized "identifications, papers and [ ] firearms" that were beyond the scope permitted by search warrant. Either argument fails. First, the firearms are admissible in any event for the reasons set forth above, *infra* at 7. Next, the search warrant affidavit *does* demonstrate a nexus between the items to be seized and illegal drugs. Sgt. Toland explained that, in his experience, drug dealers "frequently maintain records of their drug transactions, including telephone lists, money ledgers and customer lists." (Search Aff. ¶ 3.) To the extent Defendant claims the search exceeded the scope of the warrant, his motion lacks sufficient detail. He has failed to identify any specific item seized that was beyond the scope of the warrant. *See United States v. Lisbon*, 835 F.Supp.2d 1329, 1347 (N.D. Ga. 2011) (suppression motion denied, in part, for failure to specifically identify items seized in violation of warrant).

**Conclusion**

For the reasons set forth above, Defendant's motion to suppress is due to be and hereby is **DENIED**.

**DONE** and **ORDERED** this the 6th day of October, 2014.

>	s/*Charles R. Butler, Jr.*
>	**Senior United States District Judge**